## Eliab Going *versus* John Emery.

The *St.* 43 *Eliz. c.* 4, relating to charitable gifts and uses, forms, in principle and substance, a part of the law of this Commonwealth.

A testator devised as follows : " I give and bequeath all the residue of my estate, both real and personal, of whatever name or nature soever, or wherever said property may be found, to the cause of Christ, for the benefit and promotion of true evangelical piety and religion. And I do order and direct my executor hereafter named and appointed, to collect all the above last specified property, as soon as can be done consistently without sacrificing too much by forcing the sale thereof in an improper manner, not however to exceed the term of five years, and pay over the same unto T, S, P, and R, placing full confidence in their piety, judgment and integrity, immediately to be by them sacredly appropriated to the cause of religion as above stated, to be distributed in such divisions and to such societies and religious charitable purposes, as they may think fit and proper." It was *held*, that power was given thereby to the executor to sell the real estate, in order to carry into effect the other purposes of the devise ; and that by virtue of *Stat.* 43 *Eliz. c.* 4, the devise was not void for uncertainty, either as to the persons who were to take the legal interest in the devise, or those who were ultimately to receive the benefit of it.

WRIT of entry. By an agreed statement of facts, it appeared, that Samuel Stone, on August 7, 1830, being seised of the demanded premises, made his will, which was duly proved on September 28, 1830, and in which, after devising certain real and personal property to his wife, he made the following devise :

" I give and bequeath all the residue of my estate, both real and personal, of whatever name or nature soever, or wherever said property may be found, to the cause of Christ, for the benefit and promotion of true evangelical piety and religion. And I do order and direct my executor hereafter named and appointed, to collect all the above last specified property, as soon as can be done consistently without sacrificing too much by forcing the sale thereof in an improper manner, not however to exceed the term of five years, and pay over the same unto Rev. John Todd, of Groton, Rev. James C. Stow, Pepperell, Rev. Phillips Payson, Leominster, and Rev. Rufus A. Putnam, Fitchburg, (reserving a reasonable sum to compensate him for his time and trouble,) placing full confidence in their piety, judgment and integrity, immediately to be by them sacredly appropriated to the cause of religion as above stated, to be distributed in such divisions

and to such societies and religious charitable purposes, as they may think fit and proper."

It also appeared, that the testator appointed Joel Adams his executor ; that Adams, having accepted the trust, entered upon the demanded premises, and on November 17, 1831, conveyed them to the demandant ; and that the tenant claimed as one of the five heirs at law of the testator.

It further appeared, that the property of the testator amounted to about the sum of $21,000 ; that the personal estate, exclusive of that bequeathed to his wife, amounted to about $10,000 ; and that the real estate, which would pass by the residuary clause, was of the value of between $4000 and $5000.

. If upon these facts the Court should be of opinion, that the demandant was entitled to recover, the tenant was to be defaulted ; otherwise, the demandant was to be nonsuited.

The case was argued in writing.

*Robinson*, for the tenant.   The residuary devise, without the aid of *St. 43 Eliz. c. 4*, is void by the general principles of the common law, on account of the vagueness and uncertainty, in regard as well to the purposes to which the donation was intended to be applied, as the persons who were designed to receive the benefit of it.   *Morice v. Bishop of Durham*, 9 Ves. 399 ; *S. C.* 10 Ves. 522 ; *Baptist Association v. Hart*, 4 Wheat. 1, ; *Dashiell v. Att. Gen.* 5 Har. & Johns. 392.   This case is distinguishable in several particulars from the case of *Bartlet v. King*, 12 Mass. R. 537.   In that case, the donation was made to certain individuals expressly named in the will, and they had a vested interest immediately upon the death of the testator.   Here, upon the death of the testator, the real estate descended to the heirs ; for it is not given to the executor, nor to Messrs. Todd and others, either for their own use, or in trust, but " to the cause of Christ."

If by this will a power to sell the real estate is given to the executor, (which is not admitted,) the land still descends to the heirs and continues vested in them until the executor sells. Litt. § 169 ; Cruise's Dig. *tit.* 38, *c.* 16, § 23.   In the case of *Bartlet v. King*, the donation was made to promote a *specific object.*   In this case the property is given for religious

and charitable purposes generally, without specifying any in-
stitution or society, or even any class of societies or institu-
tions.   In almost all cases where donations are made for
charitable purposes, even to an incorporated institution, the
persons who are ultimately to be benefited by the gift, that is,
those who are strictly the *cestui que trusts*, are uncertain ; but,
in this case, the trustees are uncertain.   Messrs. Todd and
others are not made trustees by the will, except so far as to
receive the property and immediately to distribute it among
religious and charitable societies, that is, to give it to whom
they please.

That donations as vague as the one under consideration
have been sustained by the English court of chancery, cannot
be denied.   *Moggridge* v. *Thackwell*, 3 Bro. C. C. 517 ;
*Att. Gen.* v. *London*, 3 Bro. C. C. 171 ; *Att. Gen.* v.
*Herrick*, Ambl. 712 ; 2 Roper on Legacies, 112 ; 2 Bl.
Comm. 376.   But such vague donations are not valid upon
the general principles of the common law, and are not sustain-
able even in a court of equity except by virtue of the king's
prerogative, as *parens patriæ*, and the *St.* 43 *Eliz. c.* 4.
*Baptist Association* v. *Hart*, 4 Wheat. 1 ; *Morice* v. *Bishop
of Durham*, 9 Ves. 399 ; *S. C.* 10 Ves. 522 ; *Dashiell* v.
*Att. Gen.* 5 Har. & Johns. 392.

The question then is, how far the *St.* 43 *Eliz. c.* 4, has
been adopted in this Commonwealth.   It is believed, that it
has never been cited or commented upon by the Court in any
reported case, except incidentally in *Stacy* v. *Lyon*, 3 Pick.
391, and that no intimation has ever been given of its having
been adopted here, so as " to cure defects of assurances," in
cases of charitable uses, or to give validity to donations to
those uses, which would be void for uncertainty if made to
other uses.   All the cases in this Commonwealth relating to
charitable donations, proceed upon the principle, that such
donations are to be governed by precisely the same rules of
law as donations to other uses.   That the legislature have
sometimes aided these donations, is admitted.   But this cir-
cumstance rather proves, that without this legislative inter-
ference, such donations would have been governed by the
general principles of law.   The absence of a court of chancery

in this Commonwealth, to compel the execution of trusts for such vague and indefinite purposes, is a reason why such donations as have been held valid by the court of chancery in England, should not be held valid here.

It is said in 4 Dane's Abr. 6, that the *St.* 43 *Eliz. c.* 4, was *in principle* adopted by our ancestors here. This may be true. It might have been adopted so far as to give validity to donations for the uses mentioned by the statute, when made in such a manner as to be valid by the general principles of law, and still not adopted to its full extent as expounded by the English court of chancery. It was adopted so far perhaps, as to render a devise to a corporation for charitable uses valid, and so far as to repeal the statutes of mortmain.

If this devise be not wholly void, still the words of the will are not sufficient to pass the real estate. Although the testator gives his estate, both real and personal, to the cause of Christ, yet he directs his executor " to collect all the above *last specified property*," that is, the *personal property*. The word *collect* can only apply to personal property ; and as it cannot be pretended, that there is any vested interest, the authority of the executor is but a naked power without an interest, to *collect* the property ; which can only mean personal property. Nor do the subsequent words, " by forcing the sale," show that the executor was to have any thing to do with the real estate.

But if the will is sufficient to pass the real estate, the executor could not sell it without a license of court. There is certainly no power given to sell except by implication ; and although almost any words have been held sufficient to authorize the executor to sell, yet this was in cases where the intention was manifest in respect to the persons who were to receive the legacy, or the purposes to which the proceeds of the sale were to be applied.

*Farley*, for the plaintiff, to the point, that the devise was not void for uncertainty, cited Duke's Ch. Uses, 81, 115 ; *Att. Gen.* v. *Syderfen*, 1 Vernon, 225 ; 2 Roper on Legacies, 112 ; *Bartlet* v. *King*, 12 Mass. R. 543 ; *Phillips Academy* v. *King*, 12 Mass. R. 546 ; *Macy* v. *Shurmer*, 1 Atk. 389 ; *Pierson* v. *Garnet*, 2 Bro. C. C. 38 ; *S. C*

2 Bro. C. C. 226 ; and to the point, that the *St.* 43 *Eliz. c.*
4, has been adopted in this Commonwealth, at least to such
an extent as to render the devise in question valid, *Baptist
Association* v. *Hart*, 4 Wheat. 1 ; *Dashiell* v. *Att. Gen.* 5
Har. & Johns. 392 ; *Witman* v. *Lex*, 17 Serg. & Rawle,
88 ; *Christ's College, Cambridge, Case of*, 1 W. Bl. 91 ; 1 Bl.
Comm. 107 ; *Anon.* 2 P. Wms. 75 ; 1 Minot's History, 19 ;
*Rex* v. *Vaughan*, 4 Burr. 2500 ; 4 Dane's Abr. 6, 596 ;
'Anc. Chart. 52, 605 ; *Baker* v. *Fales*, 16 Mass R 501 ,
*Bartlet* v. *King*, 12 Mass. R. 537.

Going
*v.*
Emery.

SHAW C. J. delivered the opinion of the Court. Tne
present claim arises in a real action brought against one of the
heirs at law of Samuel Stone, to recover an undivided fifth
part of the real estate of which Stone died seised, and the
defence proceeds upon the assumption, that this estate de-
scended as intestate property, unaffected by any devise or
power contained in the will. The only question directly
presented for consideration, is upon the title to the legal
estate ; but it is contended, that the validity of the deed by
the executor to the present demandant depends upon the
existence and sufficiency of the power contained in the will,
that that power, if it exists, is merely auxiliary and subser-
vient to the intent and purpose of the testator, in giving the
proceeds to Messrs. Todd and others, in trust, to be applied
for religious and charitable purposes, and therefore if this gift
is void and the intent of the testator in this respect cannot be
carried into effect, because contrary to the rules of law, then
the power to the executor is void, and nothing passed by the
executor's deed, and so the legal estate still remains vested in
the tenant and the other heirs at law. In examining this
proposition, we have two principal questions for consideration.
1. Whether the executor had a power to sell real estate ; and
if so, 2. Whether the gift of the proceeds to Messrs. Todd
and others was valid.

Oct. 14th,
1834.

1. This will is certainly very inartificially drawn, but this
circumstance is never held to affect the validity of a will,
where the meaning of any particular clause, expounded by a
consideration of all other parts of the will, can be ascertained
with reasonable certainty. The rule then applies, that if a

testator having a right to dispose of his real estate, directs that to be done by his executor, which necessarily implies that the estate is first to be sold, a power is given by this implication to the executor to make such sale and execute the requisite deeds of conveyance.

In the present instance the testator manifests a clear intent to appropriate the whole residue of his estate to the religious and charitable purposes indicated. The clause in his will is, " I give and bequeath all the residue of my estate, both real and personal, of whatever name or nature soever. or wherever said property may be found, to the cause of Christ, for the benefit and promotion of true evangelical piety and religion." The whole clause is not perhaps in good taste, or expressed with any strict accuracy of language ; the words " give and bequeath " in this sentence are not legatory, for want of a donee ; but they do express an intent to dispose of the whole estate, real and personal, and declare the property dedicated and set apart for the promotion of religious charity. The next clause shows the mode by which he intended that this object should be accomplished. " And I do order and direct my executor to collect all the last above specified property as soon as can be done, consistently, without sacrificing too much by forcing the sale thereof in an improper manner, not however to exceed the term of five years, and pay over the same," &c.

Here the terms, the " last above specified property " clearly designate the residue of his real and personal property There is no devise over ; and a clear intent is expressed not to die intestate. He speaks of a sale, and inserts a caution against a forced or premature sale, and yet secures the execution of his intention, by fixing a term beyond which it shall not be postponed ; he manifests an unequivocal intention that the whole shall go to the legatees named, and yet it can do so only through the medium of a sale by the executor ; the term " collect " and the term " pay over," are not applicable to real estate, but supposing a sale made, they are strictly applicable to the proceeds of such sale. From all these considerations it appears to us very clear, that it was the intent and understanding of the testator, in the terms used, that his

executor should sell and dispose of the real estate of which he should die seised, and that the further directions apply to the proceeds. Now as the testator had an unquestionable right to confer this power on his executor ; as in expounding a will the fixed rule is, not to require the testator to make dispositions or confer authorities, in any form of words, but to gather his intentions from the words used and all the terms of the will, whatever they are, the Court are of opinion, that by force of this will a power was given to the executor to make sale of the real estate, it being necessary to carry into effect the other purposes of the will. And whenever an executor has a power under a will to sell real estate, no license of any court is necessary to, or can give any additional validity to any sale and conveyance which he may make. And it is considered a good reason for refusing such license, that the power already exists.

2. The other, and probably by far the most important question is, whether this gift can be supported, it being contended, in behalf of the heir at law, that the gift is void for uncertainty, both as to the persons who are to take the legal interest, and those who are ultimately to receive the benefit of it. That clause in the will is as follows, (after the clause before cited,) "and pay over the same unto the Rev. John Todd, of Groton, Rev. James C. How, Pepperell, Rev. Phillips Payson, Leominster, and Rev. Rufus A. Putnam, Fitchburg, placing full confidence in their piety, judgment, and integrity, immediately to be by them sacredly appropriated to the cause of religion as above stated, to be distributed in such divisions and to such societies and religious charitable purposes as they may think fit and proper."

This objection was strongly urged in the case of *Bartlet v. King*, 12 Mass. R. 537, to which the present bears a strong resemblance, but it was not there sustained. It has been contended in the argument, that this case differs from that in several particulars, and one is, that in that case the gift took effect immediately in the legatees, whereas here it vests in the first instance in the heir at law, and never does vest in the legatees. But we think this is a difference in the circumstances of the case not affecting the principle. In all cases

where a testator adopts this mode of disposing of his property, by empowering his executor to sell the property and directing him to pay over the proceeds to a particular person, the estate before sale vests in the heir at law. But upon the sale, the estate of the heir is divested, and it becomes vested in the purchaser, and the proceeds of the sale stand upon the same footing as a legacy out of personal property.

In considering the force of this objection, that of uncertainty as to the legatees, and as to those who are to take beneficially, it will tend to a better understanding of it, if we consider the parts of the proposition separately.

In the first place it is obvious, that the persons who are to take the legal interest in this legacy, are designated with precision and certainty. It is given to Messrs. Todd, How, Payson, and Putnam, jointly and personally, in their natural capacities. There is no doubt or uncertainty as to tne legal property and the capacity of the legatees at law to take and hold the property. This entirely distinguishes the case from that of the *Baptist Association* v. *Hart's Executors*, 4 Wheat. 1, where the main difficulty was, that those who were to take the legal interest, in the first instance, were uncertain; and this defect in the ·devise of the legal interest could not be helped by the *St*. 43 *Eliz. c*. 4, relative to charitable gifts and donations, because that statute had been in terms repealed in Virginia, where the question arose. Still though the persons who are to take the legal interest are certain, if the objects are wholly uncertain, it would either be a void gift, or, what is the same thing in effect, in regard to the beneficial interest, they would take it in trust for those who are legally entitled to it by the statute of distributions. It is quite manifest, from the whole tenor of the will, and the particular terms qualifying the gift, that it was given to Messrs. Todd and others, not for their own use, but in trust for others.

It is admitted in the argument, and indeed it cannot now be contested, that if the statute 43 *Eliz. c*. 4, in regard to charitable uses, is in force in this Commonwealth, it is sufficient to sustain and give effect to this trust, because there are innumerable cases, in which trusts quite as vague as the present, have been declared valid, and carried into effect. I will refer

to only one striking case, where a testator gave £1000 to such charitable purposes as he had by another writing directed. The paper referred to was not found, so that it stood generally as a gift to charitable uses. The trust was established, and the direction to a particular object left with the king as *parens patriæ*. *Att. Gen.* v. *Syderfen*, 1 Vern. 224.

There is no case in the reports of this Commonwealth, directly in point, deciding that the statute in question has been adopted in this Commonwealth. What English statutes are deemed to be in force here, is often a question of difficulty, depending upon the nature of the subject, the difference between the character of our institutions, and our general course of policy, and those of the parent country, and upon fitness and usage. As a general rule, it must be considered that our ancestors came here as British subjects, submitting to the obligations and claiming the protection and privileges of the laws of England, as they then stood. All the statutes of the realm, previously made, especially those altering, modifying, or declaring the common law, were included with and adopted as a part of that code. Those statutes of a general and beneficial nature, such as the statute of uses, of wills, and the like, of which many were passed in the reigns of Henry 8, Elizabeth, and James 1, were as useful in their nature and as beneficial to the subject, as the body of the common law. By an act passed soon after the granting of the provincial charter, 4 *Wm. & Mary*, Anc. Chart. 213, 229, it was provided, that all the laws and ordinances in force under the then late colonial government, should remain in force until altered or repealed by the provincial legislature thereby established. And by the constitution of the Commonwealth, *c.* 6, § 6, it is declared, that all the laws which have heretofore been adopted, used and approved in the Province, Colony, or State of Massachusetts Bay, and usually practised on in the courts of law, shall still remain and be in full force until altered or repealed by the legislature. It is by this course of regular transmission, that the common law of England, and the statutes in force at the time of the settlement of this country, have been established and have the force of law at the present time. It is difficult to perceive why the statute

43 *Eliz. c.* 4, passed some years before the granting of the first charter, and before the emigration of our ancestors, should not be deemed one of those thus adopted.   Many of its provisions were well adapted to the condition and circumstances, as well as to the policy and religious views, of the early emigrants.   Though there is no decision upon this point, it does not stand altogether without authority.   Some general rules pointing out what early English statutes are in force here, may be found in a case in the first volume of our Reports.   *Commonwealth* v. *Leach,* 1 Mass. R. 59.   *Sedgwick* J. says, " It appears to me, generally speaking, that the English statutes, which were in force at the time of the emigration of our ancestors, are common law here."  *Dana* C. J. adds, " Generally when an English statute has been made in amendment of the common law of England, it is here to be considered as part of our common law."

In 4 Dane's Abr. 6, speaking of the statute 43 *Eliz. c.* 4, he says, this statute makes the true distinction, between gifts to superstitious, and those to charitable uses, and states that this statute, in principle, was adopted by our ancestors here.

It is manifest, that it could only have been adopted in principle, and not in form, because, by the provisions of that statute, its objects were to be carried into effect by the agency of the court of chancery, either in the exercise of its ordinary jurisdiction, or by the modes specially given by that act ; but as no court of chancery was established here, the principles only of the statute could be adopted and applied by the ordinary tribunals, as guides for their decision, in their own course of proceeding.   The same course appears to have been pursued in other States, adopting the laws of England as the basis of their jurisprudence.

In Pennsylvania, where there is no court of chancery, it has been held, that though the *Stat.* 43 *Eliz.* is not adopted in form, its principles have been adopted and acted upon and have the force of law there, so as to sustain vague bequests, if the object be charitable.  *Witman* v. *Lex,* 17 Serg. & R. 88.

In Maryland it is considered, that the statute 43 *Eliz.* is tacitly repealed, inasmuch as it is not included in a list of

English statutes in force, reported by Chancellor Kelty, and sanctioned by the legislature, by being put forth under their authority. *Dashiell* v. *Att. General*, 5 Har. & Johns. 392.

In Virginia, as we have already stated, the statute was in terms repealed after the revolution. *Baptist Association* v. *Hart's Executors*, 4 Wheat. I. The tacit or express repeal of this act, implies that but for such repeal it would be in force.

But a statute in many respects similar to the 43 *Eliz.* was early passed, according to the simple forms of our colonial legislation, providing that all gifts and legacies to the college, schools of learning or other public use, shall be truly and faithfully disposed of according to the true and declared intent of the donors. And all persons betrusted &c. shall be liable to give account of their disposal and management thereof to the county court &c., who are empowered to require the same, where need shall be, and to appoint feoffees of trust to settle and manage the same according to the will of the donors. Anc. Chart. 52. This ordinance not only declares that the gift shall take effect according to the intent, but where there is a defect in the form of the gift, so that the legal estate cannot vest, the county court shall have power to make good such defect by appointing feoffees, to take and hold the legal estate. This is in addition to the authority of calling the trustees to account, and gives in terms to the county court, what it has been contended the court of chancery acquired by implication only from the statute of 43 *Eliz.*, the power of remedying defective conveyances and assurances where the general object is a charitable one, within the intent of the statute.

An argument was drawn from the provincial act 28 *Geo.* 2, (Anc. Chart. 605,) being an action for the better securing and rendering more effectual grants to pious and charitable uses, and it was asked where was the necessity of passing such an act, if 43 *Eliz.* was in force. We think in looking at that act, and the corresponding revised act, *St.* 1785, *c.* 51, that the gifts were made by well disposed persons, and were deemed good, but the doubt was, how such estates were to vest and *go in succession* according to the intent of the donors; and by force of the statute, deacons of churches, and the

warden and vestry of Protestant Episcopal churches, were made *quasi* corporations, capable of taking and holding all the gifts therein described in succession, so as the better to perpetuate and carry into effect the intent of the well disposed donors. The purpose therefore was to remove doubts respecting the legal estate, and to declare and confirm the same to these *quasi* corporations. It rather implies that such gifts were good in principle and in substance, but might be defeated by the ignorance or unskilfulness of grantors, in not creating proper trustees, in whom the legal estate might vest, in order to support and carry into effect the charitable intent.

But we think the case of *Bartlet* v. *King*, which has been cited with approbation by the Supreme Court of the United States upon this point, (*Inglis* v. *The Trustees of the Sailor's Snug Harbor*, 3 Peters's R. 99,) is itself a very strong authority to show, that the 43 *Eliz. c.* 4, has been substantially adopted in this Commonwealth. It is true that that statute is not expressly referred to, either in the argument or the decision. But it is quite manifest, that it was tacitly referred to and its principles were made the basis of the decision. The objection was there, as here, that the object of the request was vague and indefinite. But to obviate that objection, the Court say that the object of the bequest, and the persons for whose benefit it was intended, are not more indefinite, than they are in a great number of cases to be found in the books, in which the trusts have been adjudged to be good : — a bequest in trust for the advancement of the Christian religion among the infidels in North America, *Att. Gen.* v. *The City of London*, 3 Bro. C. C. 171 : — a trust for the benefit of poor clergymen, *Moggridge* v. *Thackwell*, ibid. 517 ; to a lying-in hospital, *White* v. *White*, 1 Bro. C. C. 12 ; — to the poor inhabitants of St. Leonard, *Att. Gen.* v. *Clarke*, Ambler, 422 ; — to poor dissenting ministers living in any county, *Waller* v. *Childs*, ibid. 524. And they further say, that in the case of *Christ's College, Cambridge*, 1 W. Bl. 91, it is adopted as a principle on which the case was determined, that the court of chancery will aid a defective conveyance to legal charitable uses. By a reference to these cases, it will appear, that they were decided upon the principles of the statute 43 *Eliz.*, and

by adopting them as the basis of an important decision here, the case affords a clear implication that either the statute itself, or the substance and the principles of the statute have been adopted and now have the force of law in this Commonwealth.

Taking this statute in principle and substance to be in force, we think this trust to a charitable use, though to a great degree vague and indefinite, may be supported. The property is well given to the legatees, the trust is plain and manifest, confidence is reposed in their piety, judgment, and integrity, to appropriate this property immediately to promote the cause of religion, by distributing it in such divisions, and to such societies and religious charitable purposes, as they may think fit.

In all the cases of charitable uses, or nearly all, the persons ultimately to be benefited by the donation are uncertain. The heathen of foreign lands, in the case of *Bartlet v. King*, were the ultimate objects of the donor's bounty ; but of what foreign country, when, how, and to what amount, with all the particular details, were left uncertain, in all other respects than this, that the testator reposed confidence in the trustees, a confidence earned by their known character for fidelity and judgment, that they would appropriate the money in such manner as to accomplish his intentions. This was held sufficient to obviate the objection of vagueness and uncertainty.

We are of opinion that the present case falls within the same principle ; the donees are particularly designated, the trust is clear, the general objects sufficiently indicated to bind the consciences of the trustees, and to render them liable in equity to account for the execution of this trust, by a suit to be instituted in the name of the attorney-general, representing the public ; and that these objects are sufficiently certain and definite, to be carried into effect, according to the established principles of law and equity, governing donations to charitable uses.

*Tenant defaulted.*