# Brookville Borough, Appellant, *v.* Startzell.

*Trusts and trustees—Charities—Charitable use—Gifts to the poor—Poor law.*

Where a person donates a sum of money to the overseers of the poor of a poor district to " be applied to the necessary use of the poor " of the district by the overseers, and he also directs that the fund shall be known by a distinctive name, and the overseers accept the trust, the fund so donated cannot be used as an integral part of the general poor funds of the district, so as to limit the recipients of the gift to the paupers of the district whose support and maintenance are provided for by taxation under the poor laws of the commonwealth.  Such a fund is applicable not only to the statutory poor of the district, but also to the " poor in the district " who have no statutory grounds for relief, and who by reason of their necessities are worthy of the consideration and assistance of charitably inclined persons.

Argued Oct. 15, 1903. Appeal, No. 39, Oct. T., 1903, by plaintiff, from order of C. P. Jefferson Co., Nov. T., 1902, No. 123, refusing mandamus in case of Brookville Borough v. John Startzell and W. R. Ramsey, Overseers of the Poor of the Poor District of Brookville Borough. Before MITCH-ELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Petition for mandamus.

PATTON, P. J., specially presiding, found the facts to be as follows :

On October 12, 1881, Paul Darling made his last will and testament wherein he made a bequest, inter alia, as follows : " Two thousand dollars a year, for nine years, for the benefit of the poor of Brookville borough and Rose township."

By a second codicil to said will dated October 13, 1881, he directed that " if under the provisions of the eleventh section of the Act of Assembly of Pennsylvania, approved April 26, 1855, entitled ' Act relating to Corporations and estates held for corporate, religious and charitable uses, or any other similar provisions of law ' any of the bequests in my said will made shall become void, then I give and bequeath to my friend George A. Jenks the sum of each and all bequests thus rendered void; but I do not restrict him from giving all of said sums in the manner I had otherwise intended to bestow them, as expressed in my said will if he chooses so to do."

Paul Darling died on November 4, 1881, within one calendar month from the date of his last will and testament. There can be no dispute that under the eleventh section of the act of April 26, 1855, the bequest to the poor of Brookville borough and Rose township became void and went to the residuary devisee. The auditor appointed by the court to distribute the estate so decided, and his report awarding the fund to the Hon. George A. Jenks was approved by the orphans' court of Jefferson county, April 8, 1884.

On May 23, 1884, said George A. Jenks entered into the following agreement with the overseers of the poor of Brookville borough and Rose township :

" Whereas on October 12, 1881, Paul Darling made his will, by the provisions of which $18,000 were bequeathed, payable in

nine years, for the benefit of the poor of Brookville borough and Rose township, in proportion to the paupers in each, as by said will will more fully appear, which bequest in consequence of the death of said Paul Darling within thirty days, became void, and by virtue of the last codicil to said will the legal right and title to the money referred to in said bequest became vested in George A. Jenks, to use and dispose of as he should choose;

"And whereas the said George A. Jenks to avoid litiationg with the heirs of said decedent concerning said bequest and others in said will contained, paid out the sum of ten thousand dollars to said heirs as a compromise.

"And whereas the mean time for the maturity of said legacy would be four and a half years from this date, and during that time the moral right to the interest thereon would be vested in others, and as I, George A. Jenks, desire to dispose of the fund now at its present value which is as follows :

| | | | |
|---|---|---:|---:|
| Amount of legacy, | . . . . . | | $18,000.00 |
| Collateral inheritance tax, | . . | $ 900.00 | |
| 18–78 of $10,000, paid in compromise, | . . . . . | 2,308.00 | |
| Discount, 4½ years 13½ per cent, | . | 1,972.00 | |
| One per cent commission and expenses, | . . . . . | 180.00 | |
| | | $ 5,360.00 | |
| | | $12,640.00 | |

"And whereas it has been determined by said George A. Jenks, with the unanimous consent of the overseers of the Poor of Brookville borough and Rose township, that a division of said fund of $12,640.00 according to the respective population of said poor districts, according to the census of 1880, would be an equitable division of the same, which would give Brookville Poor District 2136–3737 thereof, being $7,224.00, and Rose Township Poor District 1601–3737 thereof, being $5,416.00.

"Now in pursuance of the premises, I, George A. Jenks, of the borough of Brookville, Pennsylvania, do hereby propose to the poor districts of the borough of Brookville and Rose Township, respectively, that I will donate to the said Poor

District of Brookville Borough, $7,224.00, and to the Poor District of Rose Township $5,416.00 of said fund, the aggregate being the amount thereof as above stated, upon and subject to the following express terms and conditions :

" 1. The amount donated to each of the said poor districts shall be used and appropriated only for the benefit of the poor in the respective districts by the respective officers of said districts and their successors. The fund donated to Brookville Poor District shall be known as The Paul Darling Poor Fund of the Poor District of Brookville Borough. The fund donated to Rose Poor District shall be known as The Paul Darling Poor Fund of the Poor District of Rose.

" 2. These several funds shall, by the several poor districts aforesaid, be kept separate and apart from the general poor fund of the township, respectively, until, by the unanimous vote of all the overseers of the poor in both poor districts, it shall be determined that the said poor districts will not use the said funds jointly to buy a poor farm and erect a poor house thereon. Until such unanimous action of the officers of said poor districts, the interest on each fund may, by the officers of the proper districts, be applied to the ordinary poor fund of the district.

" 3. Until the unanimous vote of the overseers of the poor of the respective districts referred to in the second condition is had, each poor district, by its overseers, shall appoint a special treasurer for the fund received by it, annually, at or before May court in each year, to receive and faithfully keep, and appropriate the said fund under and according to the directions of the overseers of the poor of the proper districts.

" 4. The accounts of the respective funds shall be settled annually at the annual settlement by the auditors of the respective districts with the overseers, and also with the treasurers of the several funds.

" 5. I earnestly recommend, but do not make it a condition, that the said two poor districts shall unite the principals of the said funds, and therewith, at their earliest convenience, buy a poor-farm jointly, and erect a poorhouse thereon, for the joint use of the said poor districts ; until the said poor districts shall determine, by a unanimous vote of all the overseers of both

districts, that this request shall not be complied with, the principal of the said several funds shall remain intact. But after such action is had, in case the unanimous vote shall so determine, the several funds may then be applied to the necessary use of the poor of the respective districts by the overseers thereof.

" 6. The orders issued by the overseers of the respective districts for the disbursement of the several funds shall distinctly state upon their face the purpose for which the order was given, and until after the unanimous action of the officers referred to in the second condition and fifth recommendation, no order nor any part thereof shall be paid out of the principals of the fund.

"7. The treasurers of the respective funds shall each give a bond with sureties, which shall, after the present year, be approved by the respective overseers of the poor of the districts, and by the court of common pleas of Jefferson county in double the amount of the respective funds or portions thereof that shall be found in the treasurer's hands at the settlements annually, conditioned for the faithful keeping, accounting for, and disbursing of the several funds according to above terms and conditions of these donations, and the bond so given by the treasurer shall be obligatory upon the treasurers and their sureties until the appointment of their successors, and the approval of their bonds as aforesaid. For the present year I will act instead of the court, in the approval of the bond.

" Upon the above terms and conditions I propose to donate the above several funds to the respective poor districts of Brookville borough and Rose township in the county of Jefferson.

" May 19, 1884.                    G. A. JENKS.

" We, the overseers of the poor of the borough of Brookville and the township of Rose, do jointly accept the above donations upon the above and foregoing terms and conditions, and agree severally for ourselves and successors in office, on behalf of the said several poor districts, that the terms and conditions of said donation shall be well and faithfully kept and observed, and the funds severally applied according to the terms and conditions of said gift.

"In Testimony Whereof we, the Overseers of said Poor District, have hereunto set our hands this 23d day of May, 1884.

(Signed)  " Sam'l Craig.

" Frank X. Kreittler.

" James Chambers.

" George Ohl."

The conditions of this agreement were duly complied with. No change occurred in the relations of the parties until April 7, 1888, when it was unanimously agreed by the overseers of the poor of Brookville borough and the overseers of the poor of Rose township that " they would not use the Paul Darling Poor Funds jointly to buy a poor farm and erect buildings thereon for the said districts of Brookville and Rose, and that the said several funds should be hereafter held by said districts separately."

In the year 1895 a large portion of the Paul Darling Poor Fund of the poor district of Brookville borough was used in the purchase of land and erecting thereon a poorhouse for the use of the poor of said district, which property was named and known as the Paul Darling Memorial Home wherein the paupers of said district were cared for until about July, 1901.

In the year 1901, by virtue of proceedings under the Act of June 4, 1879, P. L. 78, the county of Jefferson became a poor district designated as " Jefferson County Poor District." It purchased land and erected buildings thereon, and in the summer of 1901, under the provisions of said act, all the poor were removed from the Paul Darling Memorial Home to the Jefferson county poorhouse.

On September 6, 1902, the Paul Darling Memorial Home was sold by the overseers of the poor of Brookville borough for which they received the sum of $6,000 which said sum (less certain claims for costs, attorney fees, expenses of sale, amounting to about $300) and also $331.23 invested by W. H. Gray, treasurer of said fund, still remains of the Paul Darling Poor Fund, in the hands of the overseers of the poor of Brookville borough.

Petitioners allege that they are entitled to this money by virtue of the provisions of the Act of April 19, 1901, P. L. 81, and allege a demand for said money and a refusal on the

part of the defendants to pay the same, and upon such allegations being made by petitioners to the court on September 15, 1902, a rule to show cause was granted why a mandamus should not issue.

To this rule on October 6, 1902, the overseers of the poor of Brookville borough filed an answer denying the right of plaintiff to the fund and alleging that it was a charity of which they were the trustees to dispense the same for the benefit of the poor of Brookville borough and for no other purpose and that it could not be diverted from said use.

On October 6, 1902, Hon. George A. Jenks, the donor of the gift, filed an answer asking to intervene and alleging that the grant was for the benefit of the poor in the poor district of Brookville borough and should not be applied to any other purpose.

The court dismissed the petition.

*Error assigned* was the order of the court.

*Cadmus Z. Gordon*, for appellant.—By the terms of his donation paper Mr. Jenks did not create an independent charity but merely made a gift to the poor district of Brookville without condition or limitation save such as are imposed on all poor funds by law. The law which directs the payment of the surplus funds in the hands of the overseers, into the borough treasury, upon erection of a county poorhouse, does not in fact divert such funds from their original purpose ; but the same law which directs the payments into the borough treasury imposes a blanket mortgage upon all taxable property in the borough to compel the repayment of said fund " for the use and benefit of the poor." The donation paper does not contain any idea of permanency of investment but, on the contrary contemplates the expenditure of the fund for ordinary poor purposes upon refusal by the overseers to erect a poorhouse for the joint use of the two districts. The expenditure of the fund in the erection of a borough poorhouse definitely ended the whole matter.

*George W. Means*, with him *B. M. Clark* and *E. Heath Clark*, for appellees.—The Paul Darling Poor Fund, under the deed of gift from Mr. Jenks, was a trust fund for charitable

uses. The courts will uphold such a charity and carry out and enforce the trust, despite all attempts to divert it: Price v. Maxwell, 28 Pa. 23.

Gifts for the alleviation of the condition of the poor generally, or gifts for the use of the poor generally, or of the poor of a particular city, town or ward, or of a particular church or society, are charitable use gifts, and as such will be enforced by our courts of equity : Witman v. Lex, 17 S. & R. 88 ; Zimmerman v. Anders, 6 W. & S. 218; Blenon's. Estate, Brightly, 338 ; Grandom's Estate, 6 W. & S. 537 ; Mayer v. Society, 2 Brewst. 385 ; Yard's Appeal, 64 Pa. 95 ; Philadelphia v. Fox, 64 Pa. 169; Kismuel v. Wagner, 6 Leg. Gaz. 110 ; Lawrence County v. Leonard, 83 Pa. 206; Wurzel's Estate, 26 Pitts. L. J. 93 ; Brooks v. Presbyterian Church, 128 Pa. 408 ; Seitz v. Seitz, 1 Mona. 626 ; Croxall's Estate, 162 Pa. 579 ; Trim's Estate, 168 Pa. 395 ; Nauman v. Weidman, 182 Pa. 263. Even if appellant's view be correct, that Mr. Jenks did not create a permanent trust for charitable uses but only made a gift for immediate expenditure, the appellant's right to the fund is not thereby established.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1904 :

The facts of the case are not disputed and are fully stated in the opinion of the court below and need not be repeated here.

We are of opinion that the fund donated by Mr. Jenks was given for a charitable use and that it must be administered by the trustees in accordance with the terms of the donation and their acceptance of the trust. The terms and conditions upon which the gift was made are explicit and are set out in a written agreement signed by the donor and the trustees. The amount donated to each of the said poor districts was to be used and appropriated only for the benefit of the poor in the respective districts by the officers of said districts and their successors. The fund was to be known as " The Paul Darling Poor Fund " of the respective districts, was to be kept separate and apart from the general poor fund of the township until it was determined that the fund would not be used jointly by the two districts, and thereafter it was to " be applied to the necessary use of the poor of the respective districts by the overseers thereof,"

Authorities need not be cited to show that this gift was for a charitable use. This is a donation to the poor of a certain locality, which has frequently and uniformly been held to be a gift for a charitable purpose by the courts of England as well as by the federal and state courts of this country. The donor had the undoubted right to make any legal disposition of the money he desired. In the instrument disposing of it, he clearly designated the class of persons who were the objects of his charity and the terms and conditions on which it should be applied. The fund was to " be used and appropriated only for the benefit of the poor in the respective districts." He appointed trustees — " the respective officers of said districts and their successors " —and created a trust by which his gift was to be made effective. For nearly twenty years the fund has been applied by the trustees to the purposes named by the donor and in conformity with the terms and conditions imposed by him when he made the gift. .

It is, however, claimed by the appellant that the donation by Mr. Jenks was a gift to the poor district of Brookville and not an independent charity ; that it became an integral part of the general poor fund of the district and must be applied as other moneys raised for the purpose by taxation. But this is not our construction of the paper creating the gift. The objects of the donor's bounty, as stated by him, are " the poor in the respective districts." This language would not limit the recipients of the gift to the paupers of the district whose support and maintenance are provided for by taxation under the poor laws of the commonwealth. The words used by the donor have a broader significance and make more numerous the beneficiaries of his charity. It was clearly his intention that the trustees should apply the funds at their discretion, not only to the poor of the district supported by taxation but also to the " poor in the district " who have no statutory grounds for relief and who by reason of their necessities are worthy of the consideration and assistance of charitably inclined persons. There are deserving people of the latter description in almost every community, and there can be little doubt but that the donor of this most commendable charity believed that members of this class of unfortunates would be found in the poor district of Brookville. They appealed to his generosity and his intention

was to provide for their necessities as well as for the support of those who might come within the statutory definition of paupers.

That this was to be a charity separate from the statutory poor fund of the district and administered as such is further apparent, we think, from the fact that it was to be known by a certain name designated by the donor in the instrument creating the charity. The money came to the donor from Mr. Paul Darling, whose desire was that it should be applied to the poor of the Brookville district. One of the terms and conditions on which the fund was donated was that it should be known as "The Paul Darling Fund of the Poor District of Brookville Borough." It is clear that Mr. Jenks's intention was that the gift should be impressed with, and known by, the name of its real donor. This makes it manifest, we think, that it was his intention that the money donated should be kept as a separate and distinct fund by the trustees under the name given it for the relief of the worthy poor of Brookville borough. This was absolutely necessary if the fund was to be known by a distinct appellation. The condition upon which the gift was accepted by the trustees was that the money donated should be known as the Darling Fund, but it is apparent that this condition must be disregarded and ignored if, as claimed by the appellant, the fund was merged in, and became an integral part of, the general poor fund of the district.

By the agreement in writing, the overseers of the poor of Brookville district became the trustees of the fund and accepted the trust, agreeing for themselves and their successors in office "that the terms and conditions of said donation shall be well and faithfully kept and observed, and the funds severally applied according to the terms and conditions of said gift." The overseers of the poor of the district thereby became the trustees of this fund and, under the agreement in accepting the trust, were required to administer it according to the terms and conditions of the donation. They could apply the fund to no other purpose. They were trustees and their authority was defined and limited by the instrument creating the trust. If they failed or declined to perform the duties imposed upon them, a chancellor would not permit the trust to fail and the cestuis que trustent to lose the benefit of the gift but would appoint another trustee to carry out the intention of the donor.

We need not consider or discuss the several acts of assembly referred to in the opinion of the court below, as the appellant very properly concedes that " Mr. Jenks might have created an independent charity and imposed such conditions upon it as he saw fit and, in that case, the legislature would not have power to interfere with it." We are of opinion that such is the character of Mr. Jenks's gift and that the fund must be administered by the trustees in accordance with the conditions imposed by the donor. The effect of the Act of March 5, 1903, P. L. 9, cannot be considered, as the case was decided by the learned trial judge prior to its passage and we must determine the questions raised by this appeal on the law as it stood at the date of the entry of judgment by the court below.

The assignments are overruled and judgment is affirmed.