Day, J.
 

 In this case a conclusion was reached concerning the construction of this will at the last term of this court, and, a motion for a rehearing having been sustained, it was resubmitted upon the briefs of counsel. With great respect for the determinations heretofore reached, the writer entertains the following views concerning matters in issue herein.
 

 The paramount question involved is whether or not the so-called charitable trusts created by item 5 of the will of Sarah Hawes, and the codicil referring to that item, are valid charitable trusts. Item 5 of the will provides:
 

 “I give, devise and bequeath all the rest, residue and remainder of my estate to Oren D. Becker or some one I may appoint in his stead, to hold without bond and to distribute as I have given instructions.”
 

 In the codicil to the will it is further provided:
 

 “In item 5 of my will I desire to be more explicit. I give to my executor, Oren D. Becker, the remainder and residue of my estate to hold in trust, to be invested by him and used to perpetuate my name and interest in Hawes Methodist Episcopal Church and to assist needy and worthy causes and persons as he understands my wishes and practice to be when living, and at his death (Oren D. Becker) if there be still a residue or remainder of my estate, it shall go to the Elizabeth G-amble
 
 *294
 
 Deaconess Home Association, incorporated under the laws of the state of Ohio, for the purpose of endowing a Hawes free bed in Christ’s Hospital for the sick and suffering. The receipt of the treasurer of this organization shall be sufficient discharge to his executor for the same.”
 

 The fundamental law of Ohio in regard to property is that the owner may do as he pleases with it, provided the disposition be not to unlawful purposes, and what he may do himself he may do by agent while living, or by executor or trustee after death.
 

 It is apparent that the testatrix desired the trustee named, first, to invest the funds and use them to perpetuate her name and interest in the Hawes Methodist Episcopal Church; and, second, “to assist needy and worthy causes and persons as he understands my wishes and practice to be when living, ’ ’ and, after that had been done, that if there was a remainder or.residue unused after Becker’s death, it was. to go to the Elizabeth G-amble Deaconess Home Association, for the purpose of endowing a Hawes free bed in Christ’s Hospital for the sick and suffering.
 

 To my mind there was first created by this will a valid charitable trust for the benefit of the Hawes Methodist Episcopal Church, and this direct bequest to the Hawes Methodist Episcopal Church was clear, unambiguous, and enforceable in a court of equity. This state is committed to the universal doctrine that charitable trusts, should be liberally construed to carry out the intentions of the testator in the creation and execution of a charitable trust, and that where there is no uncertainty in
 
 *295
 
 trustee, beneficiary or object, or manner of execution, a court of equity will not permit the same to fail.
 

 This doctrine is elementary and so well established that citation of authority to support it is needless. Measured by this rule, there is no uncertainty of trustee, for Oren D. Becker is named expressly in the will; there is no uncertainty as to beneficiary, for the Hawes Methodist Episcopal Church is named therein; and there is equally no uncertainty in the object and purpose of the trust, for it is to be used “to perpetuate my name and interest in Hawes Methodist Episcopal Church.”
 

 The religious tenets, beliefs, and practices of the Methodist Episcopal Church, and the great benefactions to mankind for which it stands, are so well known that no difficulty arises in devoting this fund to the purposes which the testatrix intended, to wit, those religious, philanthropic, and eleemosynary aims which come within the purview of that religious sect known as the Methodist Episcopal Church. It could be used for many purposes, needless at this time to enumerate. Sufficient is it to say that it might be for the endowment of a Sunday school room, or a library, the building of an organ, the maintenance of a deaconess, or a missionary, the support of some enterprise in connection with a world service program, the endowment of a perpetual supporting membership, for the annual expense budget, or for any of those numerous religious uses or purposes which are consistent with the scope and discipline of the religious denomination known as the Methodist
 
 *296
 
 Episcopal Church, so broadly known and readily understood as to need no enumeration.
 

 The fact that the testatrix desired to have her name associated with this charity, and to perpetuate her name therein, does not detract in the least from the charitable character of the bequest, nor interfere with its execution and fulfillment.
 
 Thorp
 
 v.
 
 Lund, 227
 
 Mass., 474, 116 N. E., 946, Ann. Cas., 1918B, 1204;
 
 Hosmer
 
 v.
 
 City of Detroit,
 
 175 Mich., 267, 141 N. W., 657;
 
 Franklin, Adm’r,
 
 v. Hastings, 253 Ill., 46, 97 N. E., 265, Ann. Cas., 1913A, 135;
 
 Brookville Borough
 
 v. Startzell, 207 Pa., 347, 56 A., 938;
 
 Fosdick et al.,
 
 Ex’rs, v.
 
 Town of
 
 Hempstead, 125 N. Y., 581, 26 N. E., 801, 11 L. R. A., 715.
 

 It might with equal reason be said of benefactions established by the living, such as the Carnegie libraries scattered throughout the land, or the Rockefeller Institute, that the name of the donor detracts from its validity. Many charitable trusts bear the name of the donor, such as Girard College, John Hopkins University and Hospital, and the ¡Smithsonian Institution, established by James Smithson.
 

 As to the uncertainty of purpose and object and difficulty of execution, it may be said that many charitable trusts, whose terms of creation have been even less definite than those in the case at bar, have been upheld in this state. In
 
 Miller
 
 v. Teachout, 24 Ohio St., 525, the testator provided that after the death of his wife, his estate should be appropriated by the executor to “the advancement and benefit of the Christian religion, to be
 
 *297
 
 applied in such, manner as in his judgment will best promote the object named.”
 

 In
 
 Treas. of American Tract Society
 
 v.
 
 Atwater,
 
 30 Ohio St., 77, 27 Am. Rep., 422, the testator left a fund “For the interests of religion, and for the advancement of the Kingdom of Christ in the world,” naming three societies which should be the beneficiaries.
 

 In
 
 Sowers
 
 v. Cyrenius, 39 Ohio St., 29, 48 Am. Rep., 418, the testator provided that his residuary estate should go “for the preaching of the gospel of the blessed Son of God, as taught by the people known now as Disciples of Christ. The preaching to be well and faithfully done” in certain designated points.
 

 All of these charitable trusts for religious purposes were upheld, and other Ohio cases could be cited to the same effect. It is, however, unnecessary to multiply Ohio authorities on this point. In other jurisdictions trusts of this character have been quite universally sustained. While it is true that in some states, where a strictness of construction in charitable trusts is followed, eases may doubtless be found which entertain the other view, nevertheless, Ohio is supported by the great weight of authority in most of the other jurisdictions, citations to a few of which aré as follows:
 

 “For the general advancement of Christianity.”
 
 Sandusky, Ex’r,
 
 v.
 
 Sandusky,
 
 261 Mo., 351, 168 S. W., 115.
 

 “To further the cause of our Lord Jesus Christ.”
 
 Phelps
 
 v.
 
 Lord,
 
 25 Ont. Rep., 259.
 

 “To the cause of Christ, for the benefit and
 
 *298
 
 promotion of true evangelical piety and religion.”
 
 Going
 
 v.
 
 Emery,
 
 33 Mass. (16 Pick.) 107, 26 Am. Dec., 645.
 

 “For the purpose of evangelization and preaching of the Gospel.”
 
 Rhodes
 
 v.
 
 Eater,
 
 27 N. M., 489, 202 P., 698, 22 A. L. R., 692;
 
 Simpson
 
 v.
 
 Welcome, Ex’r,
 
 72 Me., 496, 39 Am. Rep., 349;
 
 Trafton
 
 v.
 
 Black, Ex’r,
 
 187 Ill., 36, 58 N. E., 292;
 
 Trustees of Storrs’ Agricultural School
 
 v.
 
 Whitney,
 
 54 Conn., 342, 8 A., 141;
 
 McAlister
 
 v.
 
 Burgess,
 
 161 Mass., 269, 37 N. E., 173, 24 L. R. A., 158;
 
 Wilkinson
 
 v.
 
 Lindgren,
 
 L. R., 5 Ch. App. Cases, 570;
 
 Phillips
 
 v.
 
 Barrow,
 
 93 Iowa, 92, 61 N. W., 434;
 
 Atty. Gen.
 
 v.
 
 Wallace,
 
 46 Ky. (7 B. Mon.), 611.
 

 A well-considered and annotated case will be found with an excellent collection of authorities in 22 Am. L. R. Ann., page 697. See also, 37 L. R. A. (N. S.), 1001, and 14 L. R. A. (N. S.), 92-96.
 

 Therefore, it seems clear to me that this charitable trust must be readily sustained, and that authority for so doing is not only ample in this state, but supported by the very great weight of authority in other jurisdictions.
 

 This brings us to a consideration of the next clause, “and to assist needy and worthy causes and persons as he understands my wishes and practice to be when living.”
 

 The plain, simple language herein employed indicates that, by reason of the trust relation which the testatrix was creating with Oren P. Becker, her trustee, many matters concerned with the disposition of her estate and her trust fund were discussed with him. She had confidence in him, and
 
 *299
 
 he doubtless fully understood what her wishes and practices concerning worthy causes were during life, and what her wishes and desires were as to the needy and worthy causes to be cared for after her death. The position of the expression, “to assist needy and worthy causes,” coming immediately after the gift to the Methodist Episcopal Church, indicates that the testatrix had in mind causes which were worthy from a charitable standpoint, and in need of assistance to further their trustworthy objects. It had been the practice of the testatrix, when living, to assist such, and she desired that after her death her property in part should be used to continue such practice, and she conveyed to her trustee power to thus carry out her wishes, expressly saying that he understood what her wishes in that connection were.
 

 The matter is well stated in 5 Ruling Case Law, Section 82, page 347:
 

 “It may be stated generally that the courts have uniformly dealt with the greatest liberality with charitable trusts, and much uncertainty or indefiniteness as to beneficiaries is permitted under the law; and it has been repeatedly held that a charitable trust will not be held to fail on account of any uncertainty as to the persons to whom it is to be applied, if there is some one appointed to mate a selection and thereby render certain the beneficiaries who are to enjoy the testator’s bounty. This doctrine proceeds upon the ground that that will be regarded as certain which can be rendered certain. When a power is conferred on the trustees to distribute the fund to members of a class, such members having certain qualifications
 
 *300
 
 which, can be ascertained only by the exercise of judgment and discretion, as the act of distribution cannot be performed except after such ascertainment of the particular beneficiaries, the principal power to distribute the moneys carries with it the incidental and necessary power of selection. And this, upon the ordinary doctrine that when an act is authorized to be done by a trustee or other agent, every authority requisite to the doing of such act is, by intendment of law, comprised in such grant of power.”
 

 Many courts have upheld wills containing charitable bequests wherein expression of confidence in the trustee appears, and especially in cases wherein a discretion is vested in the trustee.
 
 Coffin
 
 v.
 
 Atty. Gen.,
 
 231 Mass., 579, 121 N. E., 397;
 
 Gill
 
 v.
 
 Atty. Gen.,
 
 197 Mass., 232, 83 N. E., 676;
 
 Dulles’ Estate,
 
 218 Pa., 162, 67 A., 49, 12 L. R. A., (N. S.), 1177;
 
 Selleck et al., Trustees,
 
 v.
 
 Thompson,
 
 28 R. I., 350, 67 A., 425;
 
 Haynes
 
 v.
 
 Carr et al., Ex’rs,
 
 70 N. H., 463, 49 A., 638;
 
 Rotch
 
 v.
 
 Emerson,
 
 105 Mass., 431; 5 Ruling Case Law, 347, Section 82.
 

 Here, again, this charitable trust is not void for uncertainty for the trustee is certain, the object and purpose were not uncertain, for the trust was to be for the benefit of needy and worthy causes and persons, as the testatrix had instructed her trustee and given him to understand her wishes and practices to be when living, nor were the beneficiaries rendered uncertain, for there is thus given by the language of the will in this regard a power of selection to the trustee to be exercised consistently with the instruction the testatrix had given him.
 

 
 *301
 
 Objection is made to the enforcement of this portion of the charitable trust, for the reason that in the event the trustee should die, or should not survive, there would be no one who would understand the wishes of the testatrix and her practices when living. Granting, for the sake of the argument, this to be so, it by no means follows that the charitable trust to the Hawes Methodist Episcopal Church, and the remainder unused to the Elizabeth Gamble Deaconess Home, should therefore fail. It is well established, that, if a will contains one valid charitable trust, the fact that other charitable trusts sought to be created by the same will may be held to be invalid does not thereby affect the valid charitable trusts that may be contained in the will.
 

 An instance of the foregoing doctrine will be found in
 
 Bowditch, Trustee,
 
 v.
 
 Atty. Gen.,
 
 241 Mass., 168, 134 N. E., 796, 28 A. L. R., 713, where.-' in the testatrix sought to create a charitable trust, which was held to be invalid, while other clauses of her will, one creating a trust to promote the cause of temperance and the other a trust to promote the best interests of sewing girls in a specific city, were both held to be valid charitable trusts. The Massachusetts court in that case recognized anew the oft-reiterated doctrine that “a gift dedicated by a general benevolent purpose is to be liberally construed, and, if reasonably possible, upheld as a valid charity,” that “charitable uses are favorites with courts of equity;” that the “construction of all instruments whereby they are concerned is liberal in their behalf.”
 

 
 *302
 
 Further, it is not to be presumed that the trustee,
 
 Oren
 
 D. Becker, will fail to act
 
 in
 
 the premises and in the event of his death the will makes ample provision for the balance unused to pass on to the third charitable purpose, to wit, for the endowment of a free bed in the Elizabeth Gamble Deaconess Home.
 

 Our attention is called to the case of
 
 Rogers
 
 v.
 
 Reaf Trustee,
 
 98 Ohio St., 315, 120 N. E., 828, in which the following item of the will of the testatrix was before this court for construction:
 

 “After all of the balance of the lands of which I may die seized are sold and converted into money as hereinafter provided, then I do hereby give, devise and bequeath unto O. P. Converse, of London, Madison county, Ohio, all of the balance and residue of my estate, whether it be money or uncollected notes and securities, in trust for the following purposes, to wit, to collect any uncollected notes that he can reasonably collect, and then to use all the remainder of such notes and the balance of the money belonging to my estate including any that may be so realized from any of said notes and securities
 
 for any such charitable purposes that he may de&m proper and designate in such amounts as he may designate and think
 
 best,
 
 for permanent or temporary charities, ¡and no bond shall be required of him in so doing.”
 

 The court held that this trust was too indefinite to be enforced, and that it was a peculiarly personal trust in Converse, the trustee. It gave him power to use the funds for any charitable purpose that he might deem proper and designate in such amounts as he may designate and think best for
 
 *303
 
 temporary or permanent charities, thus eliminating any instructions which the testatrix had given her trustee, and any understanding which he may have had as to her wishes in the premises, or her practices when living, such as are expressed in the will of 'Sarah E. Hawes. Therefore, as in
 
 Rogers
 
 v.
 
 Rea, supra,}
 
 the trust was clearly dependent upon the pleasure of the trustee for its creation and execution, when the trustee failed the trust would likewise fail; hut the will in the case at bar is not to be charged with any such infirmities, for, in the event of the death of the trustee, Oren D. Becker, any unexpended balance in his hands goes to the Elizabeth Gamble Deaconess Home. And, again, the plain language of the will as to the Hawes Methodist Episcopal 'Church leaves nothing to the trustee for creation, but calls only for execution.
 

 An examination of the entire will, as set forth in the record, discloses the fact that the testatrix was of philanthropic disposition, and her will, while not drawn with utmost care and technical learning, yet shows a clear intention by the testatrix, after she had made such personal bequests to the individuals she desired to remember in her will, to dispose of her property in such manner that certain portions of her estate should be devoted to charity. It was her property. She was of full age, and of sound mind and memory, and not under any restraint. She had a right to do with her property as she saw fit, and it is, therefore, in my opinion, the duty of a court to uphold her clear purpose and intention, and to sustain the charitable purpose of the testatrix, rather than,
 
 *304
 
 to defeat it by lack of that broad and liberal construction to which charitable trusts are entitled.
 

 It was clearly
 
 not
 
 the intention of the testatrix that such portions of her estate as she proposed to devote to charity should by operation of law go to other persons aud be used for other purposes than those which she clearly designated, to wit, charitable uses. For so much of her estate as she desired to go to heirs at law or relatives, she had made suitable provisions to that effect.
 

 Being of opinion that the intention of the testatrix should govern in this matter of the disposition of her property after her death, and that the bequest to the Hawes Methodist Episcopal Church can rightfully be sustained and enforced in a court of equity, it is my conclusion that such bequest should be sustained; that the understanding given Oren D. Becker, trustee, by Sarah E. Hawes, during her life, as to her wishes and practices concerning the assistance of needy and worthy causes, is enforceable under the broad powers extended to effectuate' a charitable trust; that upon the death of Becker, if there still be a residue or remainder of the estate of Sarah E. Hawes, it shall go to the Elizabeth Cambie Deaconess Home Association, incorporated under the laws of the state of Ohio, for the purpose of endowing a Hawes free bed in Christ’s Hospital for the sick and suffering. Sarah E. Hawes during her lifetime could have taken her property and handed it to Oren D. Becker with directions, even verbal, to distribute the same in his discretion among religious, charitable, benevolent objects or institutions, and have thus assisted needy and worthy
 
 *305
 
 causes and persons as she saw fit to direct. That disposition would have been valid and unassailable. There is no good reason why Sarah E. Hawes, now dead, should have been unable to mate the same disposition of her property by her last will and testament.
 

 Entertaining this view as to her rights in the premises, this will creating these charitable trusts, construed in the light of the broad and liberal construction to which it is entitled, is sustained. The judgments of the courts below are therefore reversed, and this cause is remanded, with instructions to enforce this charitable trust in accordance with this opinion.
 

 Judgment reversed.
 

 Marshall, C. J., Allen and Kinkade, JJ., concur.