JOSEPH G. THORP, trustee, *vs.* JOHN LUND & others.

Middlesex. March 12, 13, 1917. — June 27, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Deed. Trust. Charity. Words,* "Or," "Philanthropic."

A voluntary deed of trust, signed and sealed by a settlor and delivered to the trustee therein named together with certain bonds and stocks to be held in accordance with its terms, which contains no condition as to its taking effect and no power of revocation, although not acknowledged or recorded, cannot be revoked or modified by the settlor, and a second deed of trust executed by the settlor attempting to change the terms of the first deed is of no effect.

No assent by any beneficiary under such a deed of trust is necessary to its validity.

A fund created by a deed of trust, at the termination of certain life interests, to be appointed to a "national or philanthropic purpose in Norway associated with the name of my late husband, Ole Bull," was *held* to constitute a charity.

In the description of the charitable purpose quoted above the word "or" was construed to mean "and," thus requiring the purpose to be both national and philanthropic, as well as to be executed in Norway, where Ole Bull, whose achievements were a just source of pride to the Norwegian people, was in a sense a national hero.

By the deed of trust named above the settlor gave a power of appointment by deed or will of the trust fund to the settlor's daughter, and provided that, "In case my said daughter shall die without issue and without directing the payment of said principal, in whole or in part, as above provided, said principal and any accumulation of income thereon shall be paid, either in equal shares to the surviving children of my said brother or to the carrying out of the purpose above described, at the discretion of the Trustee." After the death of the settlor, the settlor's daughter died without issue within the meaning of the trust instrument, and by her will attempted to appoint the trust fund in perpetuity for the maintenance of a private estate to the use of certain individuals in their personal capacity. *Held,* that, the attempted appointment by the daughter being invalid and she having died without issue, the right to make the appointment vested in the trustee.

In the same case it was *held* that an appointment of the fund by the trustee would be proper to the Ole Bull Fund Committee, which was established by royal charter in Norway to administer the surplus moneys collected for the Ole Bull monument in Norway and not needed for that purpose, and the income of which was to be applied directly or by accumulations to the distribution of donations to the younger musicians, actors and actresses holding engagements with the "National Stage of Bergen," which was founded by Ole Bull and was in a sense a national theatre of Norway.

BILL IN EQUITY, filed in the Supreme Judicial Court on December 17, 1912, and in its amended form on December 24, 1914, by Joseph G. Thorp of Cambridge, the trustee under an indenture of trust dated February 5, 1903, made with him as such trustee by Sara C. Bull, then of Cambridge, the widow of Ole Bull, for instructions.

The case was heard by *De Courcy,* J., who at the request of the parties reserved it for determination by the full court and reported the evidence, which it was agreed should be taken as true with the power in the court to draw inferences of fact.

*C. K. Cobb,* for the plaintiff, stated the case.

*E. M. Parker,* for Joseph G. Thorp, individually.

*W. S. Hall,* for the members of the Ole Bull Fund Committee.

*A. Lincoln,* for Ralph S. Bartlett, administrator, and for Sylvea Bull Vaughan.

*J. Sargent,* for the surviving children of the settlor's brother, Joseph G. Thorp, submitted a brief.

RUGG, C. J. 1. This is a bill for instructions by a trustee under a written instrument of trust. It was executed by the sister of the plaintiff, who contemporaneously handed to him certain bonds and stocks to be held according to its terms. Two trust deeds were signed by the settlor, one dated on February 5, 1903, and the other on February 25, 1903. The first was signed and delivered and at the same time all the securities were placed in the possession of the trustee. It did not require acknowledgment or record in order to be valid. There was no condition about its taking effect, and there was not inserted in it any power of revocation. Although the trust was voluntarily established, it could not be revoked or modified by the settlor in the absence of reservation to that effect. *Lovett* v. *Farnham,* 169 Mass. 1. *Sands* v. *Old Colony Trust Co.* 195 Mass. 575, 577. A copy of the deed of trust was sent to the daughter of the settlor, but its delivery was not made dependent upon her approval. The second instrument was not called to her attention until long after it was signed.

2. No assent by any beneficiary was necessary to the validity of the trust. *Boston* v. *Turner,* 201 Mass. 190, 194. *Bailey* v. *Wood,* 211 Mass. 37, 42. The second instrument was of no consequence under the circumstances here disclosed. The first deed of trust took effect and the rights of the parties are to be determined according to its terms.

3. The pertinent words of the deed of trust, which describe the purposes to which the trust fund shall be applied, are these: "To pay over the net income therefrom to my daughter, Olea Bull Vaughan, during her life and in case she has issue surviving her during the continuance of this trust, to pay the net income in equal shares to them. And to pay over the principal, in whole or in part, as a fund to be devoted to such national or philanthropic purpose in Norway associated with the name of my late husband, Ole Bull, as my said daughter during her lifetime or by will may direct. . . . In case my said daughter shall die without issue and without directing the payment of said principal, in whole or in part, as above provided, said principal and any accumulation of income thereon shall be paid, either in equal shares to the surviving children of my said brother or to the carrying out of

the purpose above described, at the discretion of the Trustee." The settlor and her daughter both have deceased, the latter without issue within the meaning of the trust instrument.

The question is, whether a charitable trust was created by the words just quoted. In deciding that question the circumstances of the parties and their relation to the subject matter may be considered as giving the connection in which the words were used.

The settlor was the widow of Ole Bull, to whom she was married in 1870 and who died in 1880. Ole Bull was a Norwegian by birth, renowned in Europe and America as a most distinguished violinist. He was intensely patriotic. His devotion to his native country and his zeal for her welfare were widely known. It was his earnest effort and unflagging purpose to arouse and stimulate among his fellow countrymen a spirit of devotion to Norway and to secure for her the position and recognition among nations which he felt was her due. He strove constantly to cultivate her national music and art. In furtherance of these nationally patriotic designs he labored for the National Theatre at Bergen in Norway, which was established largely through his personal efforts. Before 1909 a committee had been formed in Norway to solicit and receive subscriptions to erect a monument to Ole Bull. A large amount of money was collected and after erecting a suitable monument to his memory in a public square a considerable sum remained, which, according to the Norwegian statutes for the administration of the Ole Bull Fund, was to be managed by a committee of five members in general for the encouragement of music and the dramatic art in connection with the National Stage of Bergen.

A gift dictated by a general benevolent purpose is to be liberally construed and, if reasonably possible, upheld as a valid charity, rather than declared void. *Saltonstall* v. *Sanders,* 11 Allen, 446, 455. The Constitution of Massachusetts by c. 5, § 2, makes it the duty of magistrates "in all future periods . . . to countenance and inculcate the principles of humanity and general benevolence, public and private charity." It was said in *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303, at page 313, "Charitable uses are favorites with courts of equity. The construction of all instruments where they are concerned is liberal in their behalf." It was said by Mr. Justice Gray in *Jones* v. *Haber-*

*sham,* 107 U. S. 174, at page 185, "It is only when a gift might be applied to benevolent purposes which are not charitable in that sense, that the gift fails. *Saltonstall* v. *Sanders,* 11 Allen, 446; *Suter* v. *Hilliard,* 132 Mass. 412." A gift charitable in its nature will be upheld as valid though to be executed in a foreign country. *Fellows* v. *Miner,* 119 Mass. 541. *Teele* v. *Bishop of Derry,* 168 Mass. 341. *Russell* v. *Allen,* 107 U. S. 163, 172. *Whicker* v. *Hume,* 7 H. L. Cas. 124, 141, 155.

The fund under the present instrument of settlement is to be appointed to a "national or philanthropic purpose in Norway associated with the name of my late husband, Ole Bull." The word "charity" or "charitable" is not used in the instrument. But that is not essential to the creation of a valid charity. If the substance of the object described by the words employed comes within the definition of a charity, as that word is used in equity, then the gift is valid.

A gift to a civilized and friendly nation for a national purpose, if no other words were used, would be a valid charity under numerous authorities. It is within the scope of the concluding phrases of the classic definition of a charity given by this court speaking through Mr. Justice Gray in *Jackson* v. *Phillips,* 14 Allen, 539, 556, "A charity, in the legal sense, may be more fully defined as a gift, . . . for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." The succinct and oft quoted definition of a charity in *Jones* v. *Williams,* Ambl. 651 as a "gift to a general public use, which extends to the poor as well as to the rich," looks in the same direction. This has been amplified and approved in several of our decisions. *New England Sanitarium* v. *Stoneham,* 205 Mass. 335, and cases collected at page 342. In *Nightingale* v. *Goulburn,* 5 Hare, 484, a gift "to the Queen's Chancellor of the Exchequer for the time being, and to be by him appropriated to the benefit and advantage of my beloved country, Great Britain," was supported as a charity in these words: "I cannot conceive a purpose to which these trust funds could be lawfully applied, according to the will, which

would not be so general and public in its character as to constitute a charitable use." A trust for the benefit of the nation has been held to be a good charitable trust. *In re Verrall,* [1916] 1 Ch. 100. Gifts in payment of the national debt are upheld. *Dickson* v. *United States,* 125 Mass. 311. *Ashton* .v. *Langdale,* 15 Jur. 868. *Newland* v. *Attorney General,* 3 Meriv. 684. Bequests to promote the efficiency of the army, *In re Good,* [1905] 2 Ch. 60, to teach shooting among the National Rifle Association "so as to prevent . . . a catastrophe similar to that at Majuba Hill," *In re Stephens,* 8 T. L. R. 792; *S. C.* [1892] W. N. 140, and to a volunteer military company, *In re Lord Stratheden & Campbell,* [1894] 3 Ch. 265, all have been held to be good charities. Gifts for the furtherance and inculcation of patriotism are charitable. *Molly Varnum Chapter, D. A. R.* v. *Lowell,* 204 Mass.. 487. *Old South Association* v. *Boston,* 212 Mass. 299. *Sargent* v. *Cornish,* 54 N. H. 18. Doubtless a gift for a general public utility is not necessarily a charity. But a gift for a purpose confined to that which is national in the sense that it might be supported at public expense and by general taxation is a close approach to a charity.

The words "or philanthropic" are conjoined with "national" as expressive of the purpose to which the fund may be appointed.

It is a familiar rule in the interpretation of instruments relating to the establishment of charities that "the word 'or' will be construed to mean 'and' when this seems necessary to give effect to the meaning" of the person declaring a general purpose of that sort. *Clarke* v. *Andover,* 207 Mass. 91, 96, and cases there cited. *McClench* v. *Waldron,* 204 Mass. 554, 557. This rule is applicable, especially in instances where one word expresses a charitable use and the other if standing alone might not indicate a strict charity. The dominant word is taken to be the one pointing to a charity and the more indefinite word linked with it is held to be narrowed and colored by its context or used as a synonym with it, in order to make effective the main charitable intent. Numerous illustrations may be given. In *St. Paul's Church* v. *Attorney General,* 164 Mass. 188, a gift for "any charitable or benevolent object or objects" was upheld as a charity, "or" being construed as "and," although a bequest for benevolent purposes alone was held to be too indefinite to be supported as a charity, in *Chamberlain* v. *Stearns,* 111 Mass. 267.

A gift in aid "of objects and purposes of benevolence or charity" was sustained as a charity on the same principle in *Saltonstall* v. *Sanders*, 11 Allen, 446, 465 to 471. To the same effect is *Rotch* v. *Emerson*, 105 Mass. 431, 434, and *Weber* v. *Bryant*, 161 Mass. 400.

There is nothing about the frame of the sentence in the instant trust deed to indicate that "or" was used in a disjunctive sense as distinguishing "national" from "philanthropic." The word "philanthropic" is almost if not quite synonymous with the word "charity," at least as it was used at the time of the enactment of St. 43 Eliz. c. 4, about which centres so much of the law concerning charitable uses. That is illustrated, as was pointed out by counsel in argument, by the nearly contemporaneous use of the word "charity" in the King James Version of the familiar thirteenth chapter of First Corinthians, while the Revised Version translates the same Greek word as "love." This accords nearly with the definition of charity given in argument in the Girard will case and quoted in 14 Allen, 556, and adopted in *Ould* v. *Washington Hospital for Foundlings*, 95 U. S. 303: "whatever is given for the love of God, or for the love of your neighbor, in the catholic and universal sense — given from these motives, and to these ends — free from the stain or taint of every consideration that is personal, private or selfish." It was said in *Rotch* v. *Emerson*, 105 Mass. 431, 434, "'Philanthropic' is not in itself widely variant from 'charitable.'" Philanthropic has been used either in bequests or in definitions as not essentially different from charitable. *Mackinnon* v. *Mackinnon*, [1908–9] Sc. Sess. Cas. 1041. *In re Cranston*, [1898] 1 Ir. R. 431, 446. *In re Wedgwood*, [1915] 1 Ch. 113. *Pell* v. *Mercer*, 14 R. I. 412.

The words "national" and "philanthropic" are coupled with the further description that the purpose is to be executed "in Norway" in association "with the name of my late husband, Ole Bull." In this connection it is plain that Ole Bull rightly was regarded as a distinguished patriot, whose name and example would be an inspiration to the youth of the future generations in that country. He was in a sense a national hero, whose achievements were a just source of pride to the Norwegian people. A fitting memorial to such a person, national in scope and philanthropic in character, was the thought expressed by the settlor.

Whatever may be said as to these elements singly, all combined constitute the trust thus created a charity under the established principles of law.

These circumstances seem to distinguish the case at bar from *In re Macduff*, [1896] 2 Ch. 451; but if and so far as it is inconsistent with this conclusion, we are not inclined to follow it. They establish a charity as defined in *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342: "It is not confined to mere almsgiving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man." *Little* v. *Newburyport*, 210 Mass. 414, 417.

4. The daughter of the settlor, Olea Bull Vaughan, died leaving a will wherein the only provision concerning the power of appointment is in these words: "V. I give and bequeath to 'The Ole Bull Fund Committee' of Bergen, Norway all stocks, bonds, money or other evidences of indebtedness now held in trust for me by Joseph G. Thorp as trustee under a deed of trust to said Thorp as trustee from my mother, Sara C. Bull, said deed of trust being dated February 5, 1903, or thereabouts, to hold and manage as a perpetual trust for the following purposes; To use the annual net income of said fund, said fund now amounting to thirty thousand ($30,000), dollars or thereabouts — for the purpose of preserving, maintaining and making improvements upon Lysoen, Norway, — the home of my father Ole Bull — as a Memorial to his memory. This bequest is made in accordance with and by virtue of a power to me given in said above mentioned deed of trust." Lysoen is an island off the coast of Norway. It was owned in fee by Mrs. Vaughan at the time of her death. By her will and codicil she gave the fee to trustees to hold for the benefit of a minor, Sylvea Bull Vaughan, during her minority, and upon her reaching the age of twenty-one years to convey the same to her in fee discharged of all trust, and in the event of her prior decease, then the island is given in fee to the two trustees and the survivor, with a gift over to another person in case of the decease of both trustees. In substance this was an attempt to appoint the fund in perpetuity for the maintenance of a private estate to be used and occupied so far as concerned right and title by named individuals in their personal capacity. An attempt to create a perpetual trust for a private use is a

nullity. ,*Bates* v. *Bates,* 134 Mass. 110. Moreover, it is plain that such an appointment is not to a public charity. It is too plain for discussion that it is not for a "national or philanthropic purpose."

5. The attempted appointment by the daughter being invalid, and she having died without issue within the meaning of the trust instrument, the right to make the appointment vests in the trustee by the express terms of the deed of gift. The trustee proposes to exercise that power of appointment in a definite way and asks the instruction of the court, as he may, *Minns* v. *Billings*, 183 Mass. 126, as to its validity.

The trustee proposes to appoint the fund to the Ole Bull Fund Committee. That committee is established by royal charter in Norway to administer the surplus moneys collected for the Ole Bull monument and not needed for that purpose, and such augmentations as may come by gift or otherwise, the income of which is to be applied directly or by accumulations to the distribution of donations to the younger musicians, actors and actresses holding engagements with the National Stage of Bergen. The National Stage of Bergen is in a sense a national theatre of Norway. It was founded by Ole Bull. It is devoted to the fostering of a national and patriotic spirit. It presents plays and music, the authors of which and the actors and musicians performing which, must be Norwegian. It is supported in part by grants from the national government of Norway and the city of Bergen. The Brigade Band, members of which are eligible to the benefits of the fund, is a part of the national army of Norway. Thus it is an institution established directly for the inculcation of patriotism, for the cultivation of music and the drama, and in a broad sense for the promotion of popular education in these departments of the fine arts. The distribution of prizes among the meritorious youth who are pursuing these studies and cultivating their skill in these branches is a charity. It is distinctly associated with the name of Ole Bull because it is provided expressly that the fund shall be administered by trustees bearing his name as a part of their title, and already holding funds donated as a memorial to him and in connection with a national institution founded by him. The proposed appointment satisfies every requirement of the trust instrument in being to a public

charity, national and philanthropic in nature, closely associated with the name of Ole Bull.

The trustee is instructed that he holds the fund under the instrument of February 5, 1903, and has the power of appointment thereof under the terms of that instrument, and that the proposed appointment of the fund to the Ole Bull Fund Committee, organized by royal charter in Norway to hold moneys for the purposes set forth in the trust instrument and in accordance with its statutes, would be a valid appointment to a public charity.

*So ordered.*