FREDERICK C. BOWDITCH, trustee, *vs.* ATTORNEY GENERAL & others.

Suffolk.    October 19, 1921. — March 21, 1922.

Present: RUGG, C.J., CROSBY, CARROLL, & JENNEY, JJ.

*Trust*, Validity; Construction; Charitable: for "womens rights," for "temperance," for "the best interests of Sewing Girls in Boston."

A testator who died in 1890 by a will which he made in 1873 gave the residue of his estate to a trustee, directing that the balance of the income, after the payment of certain annuities, be divided "into three equal parts and expended by him or given away by him in such manner as will in his judgment best promote the causes (1) of womens rights (2) of temperance and (3) the best interests of Sewing Girls in Boston — and if for any reason the Courts have held or shall hold that a devise, bequest or a trust for either of these causes is invalid, I give the share of the balance of the net income of my estate which would otherwise be paid or expended for such cause to" three designated friends "and the survivors and last survivor of them, to his, her or their sole use and behoof wholly free from all trusts and so that he, she or they may keep to his, her or their own use or expend or give away said sums as he, she or they shall think expedient." On the death of the last annuitant, the residue of the estate was given to the same three friends and the survivors and last survivor of them in trust "to divide the same among such charitable and reformatory institutions and movements

as he, she or they shall think most judicious and in accordance with my wishes. And if he, she or they shall deem it wise to aid the cause of woman's rights or any other similar reformatory movement which has not as yet received the sympathy of the Courts, and any objection shall be made by any person or persons to such disposition of my estate, so that the Court may hold or be likely to hold such appropriation of my estate to be invalid, I give the whole residue of my estate to" the same three friends "and the survivors and last survivor of them in fee simple wholly free from all trust whatever. . . ." While one of the annuitants still survived and after the death of the testator's three friends, two of whom had survived him, and the adoption of arts. 18 and 19 of the Amendments to the Federal Constitution, the trustee under the will brought a suit in equity for instructions.  *Held,* that

(1) The words "womens rights" must be construed in the usual and ordinary sense in which they were intended to be used by the testator at the time of his death;

(2) For many years before and after the testator's death in 1890 the phrase "womens rights" had a definite and well defined meaning and in common parlance was understood as being the right of women to vote, to hold office and be placed upon an equality with men in a political sense by appropriate legislation;

(3) There was no express provision in the will that the trust was created for the advancement or betterment of the social, business, industrial, or economic condition or status of women, nor can it be inferred from the words used;

(4) The trust for the benefit of the cause of "womens rights" was invalid as a public charity;

(5) In view of the provision that, if the court should hold that the trust for womens rights was invalid, the entire estate so divided should vest in the three friends and the survivors and last survivor of them in fee simple free from the trust, no occasion was presented for an application of the *cy pres* doctrine;

(6) The trust as to the third of the residue, initially to be devoted to the cause "of womens rights" if legally possible or if no objection was made, could not be sustained as a private trust, neither the purposes nor the persons to be benefited being determinable;

(7) During the life of the remaining annuitant and subject to his rights, the income of one third of the residue of the estate which constituted the trust was to be paid to the executor of the will of the survivor of the three friends;

· (8) The trust for the cause "of temperance" was for the bettering of the condition of people who suffer from the injurious consequences of intemperance caused by the use of intoxicating liquors, was a valid public charitable trust, and was not affected by the adoption of art. 18 of the Amendments to the Federal Constitution;

(9) The trust to promote "the best interests of Sewing Girls in Boston" applied to an indefinite number of a particular class, not only included within its objects the relief of poverty and distress among the members of that class but also comprehended within its spirit and intendment whatever added to their welfare and advancement and enabled them to establish themselves in life; and was valid.

The construction of all instruments involving trusts for charitable purposes is liberal in their behalf.

A gift to a public use is not unlawful as a charity because it is not for the purpose of relieving poverty.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 1, 1921, by the trustee under the will of James Jackson, late of Boston, for instructions.

The material portions of the will are described in the opinion. The instructions asked for by the plaintiff were as follows:

"1. Whether he may legally make the payments which he has been heretofore making for the promotion of women's rights, and, if not, whether he is justified in making any payments of any kind in any way for the promotion of women's rights.

"2. Whether he may legally make the payments which he has been heretofore making for the promotion of temperance, and, if not, whether he is justified in making any payments of any kind in any way for the promotion of temperance.

"3. Whether he may legally make the payments which he has been heretofore making for the promotion of the best interests of sewing girls in Boston, and, if not, whether he is justified in making any payments of any kind in any way for the promotion of the best interests of sewing girls in Boston.

"4. How, if he is not legally justified in making any further payments for the causes of 'women's rights, temperance and the best interests of sewing girls in Boston,' or any of them, he shall distribute the income from the property in his hands which is not needed for the purpose of paying the four hundred dollars per annum to the last surviving annuitant."

The suit was reserved by *Braley*, J., upon the bill and answer, for determination by the full court.

*W. R. Trask*, for the trustee, stated the case.

*B. G. Davis*, for the Massachusetts Woman Suffrage Association.

*C. W. Blood*, for Alice Stone Blackwell, individually and as executrix of the will of Lucy Stone Blackwell.

*C. P. Curtis, Jr.*, for the Needle Woman's Friend Society, as *amicus curiae*.

*R. Homans*, (*W. Gates, Jr.*, with him,) for Frederick C. Bowditch, executor of the will of William I. Bowditch.

*C. R. Cabot*, Assistant Attorney General, for the Attorney General.

*G. B. Hayward*, for the Massachusetts Woman's Christian Temperance Union, and *A. M. Beale*, for the Massachusetts Home, each submitted a brief.

CROSBY, J. This is a bill for instructions brought by the plaintiff as trustee under the will of James Jackson who died January 31, 1890. The will was executed in 1873, and was admitted to probate in Suffolk County on February 24, 1890. The residue of the estate is given to William I. Bowditch in trust, and, after the payment of certain annuities, the balance of the income is to be divided by the trustee as follows: "into three equal parts and expended by him or given away by him in such manner as will in his judgment best promote the causes (1) of womens rights (2) of temperance and (3) the best interests of Sewing Girls in Boston — and if for any reason the Courts have held or shall hold that a devise, bequest or a trust for either of these causes is invalid, I give the share of the balance of the net income of my estate which would otherwise be paid or expended for such cause to my friends Wm. I. Bowditch, Wendell Phillips and Mrs. Lucy Stone and the survivors and last survivor of them, to his, her or their sole use and behoof wholly free from all trusts and so that he, she or they may keep to his, her or their own use or expend or give away said sums as he, she or they shall think expedient." On the death of the last annuitant the residue of the estate is given to the above named William I. Bowditch, Wendell Phillips and Lucy Stone and the survivors and last survivor of them in trust "to divide the same among such charitable and reformatory institutions and movements as he, she or they shall think most judicious and in accordance with my wishes. And if he, she or they shall deem it wise to aid the cause of woman's rights or any other similar reformatory movement which has not as yet received the sympathy of the Courts, and any objection shall be made by any person or persons to such disposition of my estate, so that the Court may hold or be likely to hold such appropriation of my estate to be invalid, I give the whole residue of my estate to said Bowditch, Phillips and Stone and the survivors and last survivor of them in fee simple wholly free of all trusts whatever. . . ."

Wendell Phillips pre-deceased the testator. At the time of the testator's death Lucy Stone was married to Henry B. Blackwell; she died October 18, 1893, and the defendant Alice Stone Blackwell was appointed executrix of her will. William I. Bowditch was appointed trustee under the will of James Jackson on March 17, 1890, and died in January, 1909. The plaintiff, Frederick C.

Bowditch, was appointed his successor as such trustee, and was also appointed executor of the will of William I. Bowditch and as such executor is a defendant. All the annuitants have died except Grace, the daughter of Abby Copeland.

The bill alleges that the trustee has until recently divided the balance of the income of the trust into thirds and distributed it among certain persons and corporations to be used in the furtherance of woman's rights, temperance and the best interests of sewing girls in Boston.

1. The first bequest in question is that which directs that one third of the balance of the net income be distributed by the trustee to promote the cause of "women's rights." The words "women's rights" must be construed in the usual and ordinary sense in which those words were intended to be used by the testator at the time of his death when his will took effect. *Jackson* v. *Phillips*, 14 Allen, 539, 560. It is to be observed that the will is silent as to the manner and means by which "women's rights" are to be promoted or secured. The question therefore of the lawfulness of the gift must be determined from the words themselves unaided by any other provision of the will. When the testator executed his will in 1873 no right of suffrage had been extended to women in this Commonwealth. The following year by St. 1874, c. 389, it was provided that "No person shall be deemed to be ineligible to serve upon a school committee by reason of sex." And by St. 1879, c. 223, it was provided that every woman who is a citizen of this Commonwealth of twenty-one years and upwards who has the educational qualifications required by the Twentieth Article of the Amendments to the Constitution, with certain exceptions, and upon stated conditions, was given the right to vote for members of school committees; the right of women to vote in this Commonwealth was so limited until the Nineteenth Amendment to the Federal Constitution was ratified in 1920. The amendment declares that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex."

For many years before and after the testator's death in 1890 the phrase "woman's rights" had a definite and well defined meaning. In common parlance it was understood as being the right of women to vote, to hold office and be placed upon an

equality with men in a political sense by appropriate legislation. The will does not in express terms provide that the trust is created for the advancement or betterment of the social, business, industrial or economic condition or status of women, nor can it be inferred from the words used. So to hold manifestly would be contrary to the intention of the testator, in view of the language which he employed in creating the trust. This conclusion is strengthened by the circumstance that he undoubtedly had in mind the decision in *Jackson* v. *Phillips, supra,* which construed the will of his father and held that a bequest "to secure the passage of laws granting women, whether married or unmarried, the right to vote, to hold office, to hold, manage and devise property, and all other civil rights enjoyed by men" cannot be sustained as a charity. In that case, with reference to the bequest above quoted, it was said by this court, speaking through Mr. Justice Gray, at page 571: "This bequest differs from the others in aiming directly and exclusively to change the laws; and its object cannot be accomplished without changing the Constitution also. Whether such an alteration of the existing laws and frame of government would be wise and desirable is a question upon which we cannot, sitting in a judicial capacity, properly express any opinion. Our duty is limited to expounding the laws as they stand. And those laws do not recognize the purpose of overthrowing or changing them, in whole or in part, as a charitable use. This bequest therefore, not being for a charitable purpose, nor for the benefit of any particular persons, and being unrestricted in point of time, is inoperative and void." And at page 555: "Gifts for purposes prohibited by or opposed to the existing laws cannot be upheld as charitable, even if for objects which would otherwise be deemed such. The bounty must, in the words of Sir Francis Moore, be 'according to the laws, not against the law,' and 'not given to do some act against the law.' Duke, 126, 169. . . . In a free republic, it is the right of every citizen to strive in a peaceable manner by vote, speech or writing, to cause the laws, or even the Constitution, under which he lives, to be reformed or altered by the Legislature or the people. But it is the duty of the judicial department to expound and administer the laws as they exist. And trusts whose expressed purpose is to bring about changes in the laws or the political institutions of the country are not chari-

table in such a sense as to be entitled to peculiar favor, protection and perpetuation from the ministers of those laws which they are designed to modify or subvert."

The gift under consideration cannot be distinguished from that which was held to be invalid in *Jackson* v. *Phillips, supra.* The principles enunciated in that case have been for more than half a century the settled law of the Commonwealth. It has been widely recognized in other jurisdictions as a leading case. As it was unlawful and invalid *ab initio*, and as the testator has provided that if the court should hold that the trust for woman's rights was invalid the entire estate so divided should vest in said Bowditch, Phillips and Stone and the survivors and last survivor of them in fee simple free from the trust, the *cy pres* doctrine is not applicable. *Jackson* v. *Phillips, supra,* at pages 584, 585, and cases cited. *Bullard* v. *Shirley,* 153 Mass. 559. *Teele* v. *Bishop of Derry,* 168 Mass. 341. *Gill* v. *Attorney General,* 197 Mass. 232. *Bowden* v. *Brown,* 200 Mass. 269. *In re White's Trusts,* 33 Ch. D. 449. *Corbyn* v. *French,* 4 Ves. 418, 421. *In re Rymer,* [1895] 1 Ch. 19. *Attorney General* v. *Bishop of Chester,* 1 Bro. C. C. 444. *Catt* v. *Catt,* 118 App. Div. (N. Y.) 742. See *Thomas* v. *Howell,* 18 Law Rep. (Eq.) 198, 207, 208. Nor can it be sustained as a private trust. The persons to be benefited are not determined: after the death of the last annuitant, the third article of the will provides as follows: "I give to each of my heirs at law the sum of One dollar if demanded and I direct the payments under the second article to cease, and I give all the rest and residue of my estate . . . to . . . William I. Bowditch, Wendell Phillips and Mrs. Lucy Stone and the survivors and last survivor of them in trust to divide the same among such charitable and reformatory institutions and movements as he, she or they shall think most judicious and in accordance with my wishes." It is plain from this provision that the beneficiaries of the trust are undetermined. There is no certainty that any portion of the residue will be distributed to any institutions or movements for the cause of "woman's rights." The selection of the recipients of such residue rests solely in the discretion of the trustees. Neither the objects to which the trust is to be applied nor the persons who are to take it are capable of ascertainment. *Jackson* v. *Phillips, supra,* at page 550. *Minot* v. *Attorney General,* 189 Mass. 176, 180.

The contention of the defendant Alice Stone Blackwell, that, if any of the trusts in the will are held to be void, she as executrix of the will of Lucy Stone Blackwell takes a vested interest in one half of the residue as her testatrix, and William I. Bowditch survived the testator, is untenable; because the testator devised the whole of the residue "to said Bowditch, Phillips and Stone and the survivors and last survivor of them in fee simple wholly free of all trusts whatever. . . ." The three persons named were joint tenants: Wendell Phillips deceased before the testator, who was survived by Lucy Stone and William I. Bowditch. As the latter survived Mrs. Stone, one third of the income of the residue of the estate subject to the annuity to Grace Copeland is to be paid to the defendant Frederick C. Bowditch as executor of his will. G. L. c. 184, § 7. *Simonds* v. *Simonds,* 168 Mass. 144. The residuary clause created a joint tenancy and related to a contingent interest which became vested in the last survivor, and he having deceased, it passed to the executor of his will. *Cummings* v. *Stearns,* 161 Mass. 506. See *Dingley* v. *Dingley,* 5 Mass. 535; *Emerson* v. *Cutler,* 14 Pick. 108, 115, 116; *Minot* v. *Purrington,* 190 Mass. 336.

2. The bequest to promote the cause of temperance is a valid charitable trust. The adoption of the Eighteenth Amendment to the Federal Constitution does not affect its validity. It is not a gift for a political purpose; the adoption of the amendment has not fully accomplished the purpose of the testator, which was to better the condition of people who suffer from the injurious consequences of intemperance caused by the use of intoxicating liquors. *Jackson* v. *Phillips, supra,* at page 595.

3. The trust to promote "the best interests of Sewing Girls in Boston" is for a charitable purpose. It applies to an indefinite number of a particular class and the purpose of the testator is sufficiently certain and defined: manifestly it is a valid charity. Sewing girls are handicraftsmen, and the word "girls" implies youth. The clause "best interests" includes not only the relief of poverty and distress, but has a broader signification, and well may comprehend within its spirit and intendment whatever adds to their welfare and advancement and enables them to establish themselves in life. "A gift dictated by a general benevolent purpose is to be liberally construed and, if reasonably possible, up-

held as a valid charity." *Thorp* v. *Lund,* 227 Mass. 474, 477.
Charitable uses are favorites with courts of equity. The con-
struction of all instruments where they are concerned is liberal
in their behalf. *Saltonstall* v. *Sanders,* 11 Allen, 446. *Ould* v.
*Washington Hospital for Foundlings,* 95 U. S. 303, 313. *Jones* v.
*Habersham,* 107 U. S. 174, 185. "Such uses had indeed been
previously recognized as charitable, and entitled to peculiar
favor, by many acts of Parliament, as well as in the courts of
justice." *Jackson* v. *Phillips, supra,* 552. *Re Dudgeon,* 74 Law
Times (N. S.) 613. *Attorney General* v. *Comber,* 2 Sim. & Stu.
93. *Loscombe* v. *Wintringham,* 13 Beav. 87. *Thompson* v. *Corby,*
27 Beav. 649.

A gift to a public use is not unlawful as a charity because it is
not for the purpose of relieving poverty. Such gifts may extend
to the rich as well as to the poor; it was said in *New England
Sanitarium* v. *Stoneham,* 205 Mass. 335, 342: "It is not confined
to mere almsgiving or the relief of poverty and distress, but has
a wider signification, which embraces the improvement and pro-
motion of the happiness of man." *Drury* v. *Natick,* 10 Allen, 169.
*Mount Hermon Boys' School* v. *Gill,* 145 Mass. 139. *Dexter* v.
*Harvard College,* 176 Mass. 192. *Franklin Square House* v. *Boston,*
188 Mass. 409. *Thornton* v. *Franklin Square House,* 200 Mass.
465. *Molly Varnum Chapter D. A. R.* v. *Lowell,* 204 Mass. 487.
*Conklin* v. *John Howard Industrial Home,* 224 Mass. 222. *Thorp*
v. *Lund, supra. Ould* v. *Washington Hospital for Foundlings,*
95 U. S. 303.

The trustee is instructed that as the gift for the promotion of
"woman's rights" is invalid, he cannot hereafter make any pay-
ments out of the fund for that purpose, but is required to pay
over to the executor of the will of William I. Bowditch one third
of the income of the residuary estate, subject to the annuity to
Grace Copeland. He is further instructed that the gifts to pro-
mote temperance and the best interests of sewing girls in Boston
are valid charities and he may expend for each, one third of the
income of the residuary estate subject to the annuity to Grace
Copeland.

The terms of the decree, including all questions of costs as be-
tween solicitor and client, may be settled by a single justice.

*Ordered accordingly.*